IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ADAM ANDERSON, Administrator of the
Estate of JOEL VELAZQUEZ-REYES, a/k/a
JOEL VELAZQUEZ-REYES, a/k/a JOEL
VELAZQUEZ, deceased, on behalf of the
estate of JOEL VELAZQUEZ-REYES, a/k/a JOEL
VELAZQUEZ-REYES, a/k/a JOEL
VELAZQUEZ and on behalf of the Wrongful
Death Heirs,

        Case Number

       Plaintiff,

     v.

ORLANDO HARPER, individually and in his
official capacity as Warden of the Allegheny
County Jail; ALLEGHENY COUNTY;
SIMON WAINWRIGHT, individually and in
his official capacity as Deputy Warden of the
Allegheny County Jail; KENNETH L.
GOINGS, individually and in his official
capacity as correctional officer; DANIEL
BOSI, individually and in his official capacity
as a Captain and acting Shift Commander;
MICHAEL GILLESPIE, individually and in his
official capacity of sergeant and assistant unit
manager; MONICA LONG, individually and in
her official capacity of Deputy Warden of the
Allegheny County Jail; and PATRICIA
PORCHE, individually and in her official
capacity as a registered nurse practitioner for
Allegheny County Jail; MICHAEL
BARFIELD, individually and in his official
capacity as the Director of Mental Health;
JOHN R. WILLIAMS, JR., individually and in
his official capacity as a Major.

        JURY TRIAL DEMANDED

       Defendants.

## **COMPLAINT IN CIVIL ACTION**

AND NOW comes Plaintiff, ADAM ANDERSON, Administrator of the Estate of JOEL

VELAZQUEZ-REYES, a/k/a JOEL VELAZQUEZ-REYES, a/k/a JOEL VELAZQUEZ,

Deceased, on behalf of this Estate and on behalf of the wrongful death heirs, by and through his attorneys, STEVEN M. BARTH, ESQUIRE and JONATHAN M. GESK, ESQUIRE, and files the following COMPLAINT:

## PARTIES

1.     Plaintiff, ADAM ANDERSON, is an adult individual who is an attorney practicing in Allegheny County, Pennsylvania.

2.     On or about April 25, 2019, Plaintiff, Adam Anderson, was granted letters of administration and appointed Administrator of the Estate of JOEL VELAZQUEZ-REYES, a/k/a JOEL VELAZQUEZ-REYES, a/k/a JOEL VELAZQUEZ (hereinafter referred to as "the Estate of Joel Velazquez-Reyes"), by the Court of Common Pleas of Allegheny County at No. 2056429.

3.     Plaintiff, Adam Anderson, as the Administrator of the Estate of JOEL VELAZQUEZ-REYES, deceased, brings this action on behalf of all persons entitled to recover damages for the wrongful death of JOEL VELAZQUEZ-REYES pursuant to 42 Pa. C.S. § 8301. Plaintiffs also bring this action to recover damages on behalf of the Estate of JOEL VELAZQUEZ-REYES pursuant to 42 Pa. C.S. § 8302.

4.     The identity of all persons entitled by law to recover damages for the death of JOEL VELAZQUEZ-REYES and their relationship to the Decedent are listed as follows:

        a.)     J.O.V. - Minor son

5.     During his lifetime, JOEL VELAZQUEZ-REYES did not commence any action to recover damages for the injuries which caused his death and no other action has been filed to recover damages for the injuries and wrongful death of JOEL VELAZQUEZ-REYES.

6.      At all times relevant hereto, Defendant, ORLANDO HARPER (hereinafter "Defendant HARPER"), was the Warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards/employees and was responsible for the health, safety, and adequate medical treatment of inmates within the Allegheny County Jail.

7.      At all times relevant hereto, Defendant, HARPER, was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate medical treatment to all inmates within the Allegheny County Jail.  Accordingly, Defendant HARPER was responsible for formulating and implementing jail guard/employee procedures to protect the safety, health, availability and provision of adequate medical treatment to inmates.

8.      At all times relevant hereto, Defendant, HARPER represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision, regarding the safety, health, availability and provision of adequate medical treatment of inmates.  As such, Defendant HARPER acted under color of state law in those regards.

9.      At all times relevant hereto, Defendant SIMON WAINWRIGHT (hereinafter referred to as "Defendant WAINWRIGHT"), is the Deputy Warden of the Allegheny County Jail and directly reports to Defendant HARPER in the chain of command for this jail.

10.      Defendant WAINWRIGHT is in charge of the operation of the security functions of the Allegheny County Jail which includes topics such as implementation of frequency of guard tours, number of officers assigned to a particular pod, what tools are available on pods for correctional officers who do rounds as well as where an inmate can be housed in the jail.

3

11.     Defendant KENNETH L. GOINGS (hereinafter referred to as "Defendant GOINGS"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was the only correctional officer in charge of the medical unit pod/Level 5 Pod M in June 2017 and was responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates/suicide/detox.

12.     Defendant, Captain DANIEL BOSI (hereinafter referred to as "Defendant BOSI"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as an officer and acting shift commander of Level 5 Pod and was one of the commanding officers in charge of the medical unit pod/Level 5 Pod M in June 2017 and was responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates/suicide/detox.

13.     At all times relevant hereto, Defendant, Sargent MICHAEL GILLESPIE (hereinafter referred to as "Defendant GILLESPIE"), was the assistant unit manager in charge of the medical unit pod/Level 5 Pod M in June of 2017 and was responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates/suicide/detox.

14.     At all times relevant hereto, Defendant, MONICA LONG (hereinafter referred to as "Defendant LONG"), is a Deputy Warden of the Allegheny County Jail and directly reports to Defendant HARPER in the chain of command for this jail.

15.     Defendant LONG is in charge of the operation of the security functions of the Allegheny County Jail which includes topics such as implementation of policy on guard tours,

4

assignment of officers to a certain pod, what tools are available on pods for correctional officers who do rounds as well as where an inmate can be housed on a pod.

16.     At all times relevant hereto, Defendant, PATRICIA PORCHE (hereinafter referred to as "Nurse PORCHE"), was a Registered Nurse Practitioner for Allegheny County Jail and was responsible for, inter alia, assessing drug dependency of incoming inmates, including administering, performing, and discharging from treatment for drug detoxification.

17.     At all times relevant hereto, Defendant, MICHAEL BUTTERFIELD (hereinafter referred to as "Defendant BUTTERFIELD"), is a director of mental health and is responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates/suicide/detox.

18.     Defendant BUTTERFIELD is in charge and was responsible for, inter alia, assessing drug dependency of incoming inmates, including administering, performing, and discharging from treatment for drug detoxification as well as leading a suicide prevention intervention team.

19.     At all times relevant hereto, Defendant, JOHN R. WILLIAMS, JR. (hereinafter referred to as "Defendant WILLIAMS"), is a major who is responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates/suicide/detox.

20.     Defendant WILLIAMS is in charge and was responsible for procedural and/or hardware access to correctional officers and/or staff who made rounds, tours, supervised, implemented policy and/or any other activity related to suicide prevention.

21.     At all times relevant hereto, Defendants, HARPER, WAINWRIGHT, GOINGS, BOSI, GILLESPIE, LONG, BUTTERFIELD, WILLIAMS and PORCHE, and their agents, servants, and/or employees were responsible for creating and implementing procedures, policies,

guidelines, supervision, and practices for timely jail guard rounds to protect the health and safety of inmates.

22.     At all times relevant hereto, Defendants, HARPER, WAINWRIGHT, GOINGS, BOSI, GILLESPIE, LONG, BUTTERFIELD, WILLIAMS and PORCHE, and their agents, servants, and/or employees were responsible for creating and implementing procedures, policies, guidelines, supervision, and practices for the proper classification, observation, and treatment of inmates that are at risk of suicide and/or detoxing from drugs and/or alcohol.

23.     In performing their duties and obligations, all Defendants represented the legal authority and official policy of ALLEGHENY COUNTY, and acted under color of state law.

24.     At all times relevant hereto, the Defendant, ALLEGHENY COUNTY, was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

25.     At all times relevant hereto, all of the named Defendants are agents, servants, and/or employees of ALLEGHENY COUNTY.

26.     By virtue of its conduct, through its agents, servants, and employees, in detaining, incarcerating, protecting and rehabilitating inmates at the Allegheny County Jail, ALLEGHENY COUNTY expressly assumed the duties of maintaining the health and safety of inmates in regards to the provision and availability of adequate medical care and maintenance of clean, healthful, and safe conditions at the Allegheny County Jail.

27.     By virtue of its conduct, in the creation and management of the Allegheny County Jail, ALLEGHENY COUNTY expressly assumed the duties of maintaining the health and safety of inmates in regards to the provision and availability of adequate medical care and maintenance of clean, healthful, and safe conditions at the Allegheny County Jail.

28.     At all times relevant hereto, the Defendant, ALLEGHENY COUNTY, was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

29.     The maintenance of clean, healthy, and safe conditions and the provision of adequate medical care to inmates within the Allegheny County Jail are operations and functions of ALLEGHENY COUNTY.

## FACTS

30.     Each of the above paragraphs is incorporated herein by reference.

31.     According to the Chair of the Jail Oversight Board, Judge David Cashman, the Allegheny County Jail functions as not only as a place of incarceration but a mental health hospital.

32.     The Allegheny County Jail houses all citizens or members of the public who are accused of violating the law which includes such charges as misdemeanors, driving under the influence, domestic disputes, summary offenses, felonies and murder to name a few.

33.     At all times relevant hereto, all Defendants knew that in 2011 that a federal Bureau of Justice study found that among the nation's 50 largest jails, the Allegheny County Jail had the second highest suicide rate from 2000 to 2007, averaging 1.6666 suicides a year.

34.     At all times relevant hereto, all Defendants knew or should have known the following:

a.      Bruce Dixon, M.D., wrote an article entitled "An Analysis of Jail Suicides 1981 to 2010" for Allegheny County Jail. In this report, Dr. Dixon states that from 1981-1990 there were 20 suicides, from 1991-2000 there were 8 suicides, from 2001-2010 there were 19 suicides. In Dr. Dixon's analysis, he states that he talked to several observers who pointed out to him during the years when there were no suicides they were characterized by intensive correctional staff training and his review supports that position. Years where more suicides occurred appear to be

7

during times of change in senior administration and training was allowed to lapse. In his analysis, Dr. Dixon acknowledges that correctional staff are the first eyes on inmates and intensive training is necessary to give them the skills to detect and alert medical personnel to potential suicides.

b.     In 2007-2008, Jason Kindler and John Simeone passed away because of suicide while in custody at the Allegheny County Jail in pods 4 C and 4B (intake pods) as well as others. After these suicides, double celling and 15-minute rounds by inmate workers were implemented to help officers on the pod monitor the inmates for suicidal behavior.

c.     It is particularly important to watch medical units and/or intake pods for suicides

35.     In 2012, senior leadership changed at the Allegheny County Jail where Defendant Harper and Defendant Wainwright began their jobs as warden and deputy warden.

36.     According to Defendant Harper's previous sworn testimony in 2017, the following is noted when he took over at the Allegheny County Jail:

Q. You would agree with me, when you first started at the jail, after being there a couple weeks, you understood there was a need for you to make significant changes?

A. There were changes that I deemed necessary that needed to be made.

Q. And after you arrived, you did an evaluation, and the determination you came to was that employees were violating policies and procedures, and they should be held accountable for the policies that they were violating?

A. Yes.

Q. And you would agree when you came there in October 2012, people were not being disciplined the way that you would hold them accountable?

A. Yes. ….

Q. And you would agree with me that there were no employee evaluations being done at ACJ until sometime in 2013?

A. Yes.

Q. An employee evaluation is a way in which a manager can inform the employee of the manager's expectations and how the employee is doing?

A. Yes.

Q. You would agree that if there is a policy, it should be strictly enforced?

A. Yes.

37.     It believed at that time that intensive suicide prevention training as well as reinforcement of necessary policies and procedures lapsed as it pertained to preventing suicides at the Allegheny County Jail during this senior leadership change in 2012/2013.

38.     As a result of this change/upheaval at the Allegheny County Jail, the requirements made in 2007/2008 to require double celling in intake pods (4A/B/C) for inmates as well as making 15-minute rounds lapsed.

39.     All of the Defendants knew or should have known that approximately half of the suicides that take place within jails and prisons are in single cells.

40.     From January through September 2017, 2 suicide deaths occurred at the Allegheny County Jail, while 10 others have attempted suicide but survived, according to statistics from the Allegheny County Jail Oversight Board:

        a.     1 suicide attempt in January, 2017;

        b.     1 suicide attempt in April, 2017;

        c.     5 suicide attempts in May, 2017;

        d.     3 suicide attempts in June, 2017;

        e.     April 2017 death of Jamie Gettings by suicide in the medical housing unit.

41.     Due to the deaths of Ms. Gettings by suicide in April 2017, Defendant Allegheny County, Defendant Harper, and Defendant Wainwright, as well as the other Defendants, made the following determinations and/or changes and/or changes in staff:

        a.     Veronica Brown was terminated for cause due to the circumstances of Ms. Gettings's death;

b. It is believed that CO Brown did not receive the proper training and required training to make suicide prevention a priority at the Allegheny County Jail;

c. At all times relevant hereto, the named Defendants knew or should have known that the correctional officers who worked on the medical unit area did not have the proper training and/or any training in suicide prevention;

d. In the alternative, the named Defendants knew or should have known that the correctional officers who worked on the medical unit area did not follow policy and procedure which placed all staff and inmates at an increased risk of substantial harm;

e. That two correctional officers should be assigned to the medical unit due to the necessary duties required to safely supervise this pod;

f. The Defendants failed to assign two correctional officers to the medical unit even though they knew of the substantial risk of harm that was created by understaffing this area.

42. It is believed that the ***NO changes were made*** even though the Defendants knew or should have known that inmates were at a substantial risk of harm of suicide in the medical unit pod because of the following:

a. The medical unit correctional officers did not receive intensive training on suicide prevention.

b. The medical unit correctional officers did not receive performance evaluations in order to assist them in the performance of their jobs.

c. Only one medical unit correctional officer was assigned to this pod.

d. The medical unit correctional officers did not do rounds every 15 minutes on the medical unit pod.

e. The medical unit correctional officers did guard tours every 30 minutes and/or every 1 hour even though the Allegheny County Jail knew from previous litigation, including by not limited to Jason Kindler and John Simeone guard tours should occur every 15 minutes due to an increased risk of suicide with longer gaps between guard tours.

f.      The initial evaluation performed at intake did not convey the necessary information to the medical unit correctional officers in order to perform the appropriate suicide prevention policy.

g.      Reckless indifference to all inmates housed in the medical unit by only assigning one correctional officer to perform all of the required duties which created a substantial risk of harm to all inmates because guard tours were not conducted every 15 minutes and were done at a frequency which created a substantial risk of harm to all inmates assigned to the medical unit;

h.      CO Kenneth L. Goings was not adequately trained in order to do rounds in order to prevent inmate suicide;

i.      Defendant Warden and any other named Defendants did NOT increase the number of correctional officers working the medical unit from one to two;

j.      Defendant Warden and any other named Defendants did NOT mandate that they do rounds of the cells every 15 minutes, rather than the prior policy of checking inmates every 30 minutes;

k.      It is believed that CO Goings and the other named Defendants did not receive the proper training and required training to make suicide prevention a priority at the Allegheny County Jail;

l.      Defendant Warden and any other named Defendants knew that the shower in the medical unit cells created an area where corrections officers cannot view through the cell door window in order to observe the inmate but did nothing to remedy this well-known hazard;

m.      Inmates with suicidal history and/or tendencies were housed in semi-private cells on the medical unit even though all of the Defendants knew or should have known that a private area was created which provided an opportunity to commit suicide;

n.      A grate was allowed to exist in the ceiling in a semi private area of the cell which was a known hanging hazard and created a substantial risk of harm to all inmates housed in a medical unit cell;

o.      No policies were given to Defendant Goings, a 19-year veteran, pertaining to how guard tours must be done;

p.      That correctional officers were marking the log books prior to doing the hourly counts which was against policy and procedure;

q.      That correctional officers did not record the exact time of tours but instead rounded up to the nearest hour and/or half hour when recording times;

r.      Understaffing in the medical unit which exposed the inmates and/or employees of the jail to substantial risks of harm;

s.      Failing to make any changes to the suicide prevention policy at a Suicide Prevention Intervention Team meeting in February 2017;

t.      Failing to place suicide preventive blankets in 5B when they knew from Jamie Gettings' suicide that inmates were at a substantial risk for suicide by hanging bed sheets from the cell vent located in the private area of cells in this pod;

u.      Failing to change the overall set up of the cells in 5B to prevent suicide when they knew of inmates who committed suicide in a substantially similar manner;

v.      Failure to have suicide prevention blankets in 5 B;

w.      Failure to provide private medical screenings upon booking in order to allow inmates to more comfortably detail mental health concerns;

x.      Failing to downplay and/or removing the punitive elements of suicide watch, such as taking away an inmate's shower privileges;

y.      Knowledge of the manner of suicide of Jamie Gettings in April of 2017.

43.     At all times relevant hereto, all Defendants were required to adhere to and enforce the following policy and procedures:

a.      All Defendants must consider suicide prevention as one of the highest priorities of service within the correctional setting;

b.      All Defendants must work together to identify inmates at risk for suicide;

c.      All Defendants will have an outlined program for responding to suicidal individuals;

d.      All Defendants must learn about an inmates' high-risk periods immediately upon admission to a facility;

e.      All Defendants must learn about an inmates' high-risk periods after adjudication, when the inmate is returned to a facility from court;

f.      All Defendants must learn about an inmates' high-risk periods following the receipt of bad news regarding self or family;

g.      All Defendants must learn about an inmates' high-risk periods after suffering from some type or form of humiliation, rejection or abuse;

h.      All Defendants will review information of newly arriving inmates in this institution concerning issues related to suicide;

i.      All Defendants conducting the intake personal screen will be continuously alert to suicidal behavior;

j.      All Defendants will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for suicide;

k.      All Defendants who recognize an inmate as being potentially suicidal are to request immediate evaluation of the patient through the nursing or mental health staff;

l.      All Defendants' staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the inmate through the nursing mental health staff on the medical/mental health pods;

m.      All assessments of potentially suicidal inmates to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

n..     Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting. Regular documented supervision should be maintained;

o.      Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health/medical housing within either 5C Acute Male or 5MD Acute Intermediate Female (and 5D Acute Male when opened).

p.      Regular, documented supervision should be maintained.

q.      Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a

13

dormitory and checked every 10 to 15 minutes by correctional staff. However, the rooms should be as nearly suicide proof as possible. Ideally, constant supervision by a staff member is preferable;

r.      The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

s.      Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

t.      The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

u.      Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be in place;

v.      Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

w.      The suicide plan should specify the procedure for medical/administrative review if a suicide does occur.

x.      A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

44.      On May 23, 2017, Decedent was arrested and placed at the Allegheny County Jail and was awaiting his preliminary hearing.

45.      During the intake process, Decedent informed the ACJ employees that he had prior psychiatric treatment, prior suicide attempt, addiction, suicidal thoughts, suffered from depression, drug use within days of incarceration and/or previously been hospitalized multiple times for psychiatric treatment.

46.      At all times relevant hereto, Decedent informed the necessary people that he needed mental health treatment during his incarceration and/or in the alternative, the Decedent

was not able to notify the appropriate authorities due to the non-private manner in which inmates were required to disclose prior medical/mental health history in the jail.

47.     At all times relevant hereto, Defendants knew that Decedent required medication for his mental illness.

48.     At all times relevant hereto, Defendants knew that Decedent had drug and/or alcohol dependency and addiction.

49.     Decedent was placed in a detoxification program and then subsequently discharged from the program on May 30, 2017.

50.     On or about May 30, 2017, Decedent was transferred to the medical unit at the Allegheny County Jail.

51.     At all times relevant hereto, all Defendants recognized and knew that Decedent required ongoing medical, mental health and/or psychiatric treatment.

52.     At all times relevant hereto, all Defendants recognized Decedent as being potentially suicidal and recommended evaluation of Decedent.

53.     At all times relevant hereto, Decedent repeatedly asked to be seen by the mental health professionals but was never seen.

54.     In the alternative, the Defendants knew or should have known that Decedent required mental health and/or medical intervention at some time before June 3, 2017.

55.     It is believed that initially all Defendants should have recognized and considered Decedent as potentially suicidal and/or in medical distress and assigned Decedent to a medical unit pod with the necessary safeguards for a suicide threat.

56.     None of the Defendants assigned the Decedent to a cell that was adequately and properly suicide proof.

15

57.     None of the Defendants assigned the Decedent to a medical unit where guard tours were done every 15 minutes and/or appropriate supervision was provided.

58.     In the medical unit inmates are at a substantial risk for suicide such as Decedent because they were housed in semi-private housing which created opportunity for suicide attempts and/or self-harm which all Defendants knew about yet failed to place the necessary safeguards.

59.     At all times relevant hereto, all Defendants allowed the Decedent to have items that he could use to hang himself while celled such as sheets. Further, no sheets were provided that were considered suicide prevention blankets.

60.     At all times relevant hereto, all Defendants housed the Decedent in a room that was not adequately suicide proof and/or safe for persons similar to the Decedent; further the medical screening was not conducted in a way which allowed inmates to more comfortably detail medical/mental health concerns.

61.     Sometime on or about June 3, 2017, Decedent was left alone in his cell for an undetermined amount of time wherein he hung himself from the grate in the semi-private area of the cell with a sheet.

62.     Specifically, he was found in a shower in a medical housing unit cell where he hanged himself using a bed sheet from a ceiling grate in a semi-private bathroom, which corrections officers cannot view through the cell door window.

63.     At all times relevant hereto, Defendant CO GOINGS and other named Defendants did not conduct 15-minute rounds and/or the appropriate time sequence for safe rounds and did not adhere to the policy set in place at the medical unit in order to protect inmates and staff.

64.     It is believed that the Defendant CO GOINGS did not receive the necessary reinforcement of policies and procedures relating to suicide prevention from any of the named Defendants and/or their superiors.

65.     It is believed that CO GOINGS did not receive the necessary instructions, education, reinforcement, orders and/or policies and procedures from their supervisors, Defendant Long, Defendant Bosi, Defendant Gillespie, Defendant Wainwright, Defendant Williams, Defendant Butterfield, Defendant Porche and/or Defendant Harper.

66.     It is believed that the Defendants knew or should have known of the substantial risk of harm posed to the Decedent by being celled in the medical unit with a cell that was not secured against suicide as well as the setup of the cell which prevented observation of the medically in need inmates such as the Decedent.

67.     At all times relevant hereto, all Defendants did knowingly disregard the objective and/or excessive risk the Decedent as well as the cells they housed medically impaired inmates which posed a risk to the Decedent as well as other inmates while incarcerated at the Defendants' facility, the Allegheny County jail.

68.     At all times relevant hereto, during the course of Decedent's detention, the Defendants failed to recognize that the Decedent presented an objective and/or excessive risk of suicide.

69.     At all times relevant hereto, all of the Defendants ignored and/or failed to learn from the suicide of Jamie Gettings and her suicide in April of 2017 which was done in a substantially similar manner.

70.     At all times relevant hereto, all of the Defendants knew or should have known that a celled inmate in the medical unit pod was at an increased substantial risk for suicide which

17

they have known for decades when guard tours are not done timely, the cell is not suicide

proofed, and/or the full cell is not able to be observed by jail staff.

71.    At all times relevant hereto, all of the Defendants knew or should have known

that the semi-private cell in the medical unit pod created an increased risk for suicide which they

have known for a long period of time.

72.    At all times relevant hereto, all of the Defendants knew or should have known

that the cell in the medical unit pod created an increased risk of suicide which they knew for a

period of time due to the grate being located in the ceiling which created a hanging hazard.

73.    At all times relevant hereto, all of the Defendants allowed to lapse policies and

procedures put in place in 2007/2008 which helped prevent suicide rates from rising at the

Allegheny County Jail.

74.    At all times relevant hereto, all of the Defendants knew or should have known of

the prior litigation as well as study by Dr. Dixon which provided notice to all Defendants of the

substantial risk of harm suicide presented in the Allegheny County Jail when intensive suicide

prevention was allowed to lapse as well as a change in leadership.

75.    At all times relevant hereto, Defendants failed to be continuously alerted to

Decedent's suicidal behavior due to lax enforcement of policies and procedures.

76.    At all times relevant hereto, during the course of Decedent's detention, the

Defendants failed to respond properly or adequately to the objective and/or excessive risk of

suicide posed by the Decedent.

77.    It is believed that the failure to clear the cell from suicide hazards factually caused

the death of the Decedent and prevented the Defendants from rendering the proper first aid to

him in order to prevent his death.

78.     It is also believed that the providing a semi-private room for inmates with medical issues/mental health/addiction issues where an area is out of sight of the correctional officers and/or a shower where a grate was located which created a suicide hazard and/or the general set up and configuration of the cell substantially increased the risk of suicides in the medical unit pod.

79.     It is believed that the failure to do guard rounds/tours in a timely manner substantially increased the risk of suicides in the medical unit pod.

80.     It is believed that the prematurely discharging Decedent from the detoxification program and/or the inadequate detoxification of Decedent substantially increased his risk of suicide as he was suffering from a psychological condition as a result of, in whole or in part, the drug and/or alcohol addiction and withdrawal.

81.     It is believed that the Defendants knew that the medical unit/pod was understaffed and nothing was done in order to allow the proper number of staff to be present on the unit in order to protect the inmates from the substantial risk of suicide present in this jail.

82.     At all times relevant hereto, the Defendants knew that Jamie Gettings passed away in a substantially similar manner and did nothing to correct the deficiencies in their suicide prevention policy as well as suicide hazards present in the configuration of the medical unit and cells as well as not having the adequate number of staff present on said unit substantially increased the risk of suicides in the medical unit pod.

83.     It is believed that the lack of suicide preventive sheets in a cell with a suicide hazard substantially increased the risk of suicide in the medical unit and for this Decedent.

84.     On or about June 3, 2017, the Decedent passed away from suicide at the Allegheny County Jail.

85.     Due to the death of the Decedent by suicide on or about June 3, 2017, Defendant

Allegheny County, Defendant Harper, Defendant Wainwright as well as the remaining named

Defendants, made the following determinations and/or changes and/or changes in staff:

     a.      Kenneth L. Goings was terminated for cause due to the circumstances of
        Mr. Velazquesz-Reyes's death;

     b.      Defendant Warden increased the number of correctional officers working
        the medical unit from one to two, and mandated that they do rounds of the
        cells every 15 minutes, rather than the prior policy of checking inmates
        every 30 minutes.

     c.      It is believed that CO Goings did not receive the proper training and
        required training to make suicide prevention a priority at the Allegheny
        County Jail.

86.     As a direct and proximate result of the Defendants' conduct, Decedent suffered

the following injuries:

     a.      Asphyxiation;

     b.      Strangulation;

     c.      Abrasions and contusions of the neck; and

     d.      Death.

87.     As a result of the death of Decedent, Plaintiff claims all appropriate damages

under the Survivor Act, including but not limited to the following:

     a.)     Pain, suffering, and inconvenience;

     b.)     Anxiety, embarrassment and humiliation;

     c.)     Medical expenses;

     d.)     Funeral expenses; and

     e.)     Loss of earning capacity.

88.     As a result of the death of Decedent, Plaintiff claims all appropriate damages under the Wrongful Death Act, including but not limited to the following:

     a.)    Estate administration expenses;

     b.)    Medical expenses;

     c.)    Loss of society, companionship and services; and

     d.)    Economic loss occasioned by the death of the Decedent.

## COUNT I – VIOLATIONS OF THE EIGHTH AND/OR FOURTEENTH AMENDMENT PLAINTIFFS v. ALL DEFENDANTS

89.     Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

90.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of Defendant ALLEGHENY COUNTY and under the authority of their offices as law enforcement officers.

91.     All of the Defendants deprived Decedent of the rights, privileges, and immunities secured to him by 42 U.S.C. § 1983 and by the Eighth and Fourteenth Amendments to the United States Constitution, as well as the rights, privileges and immunities provided by Decedent by the Pennsylvania state constitution.

92.     Decedent's injuries and damages were the direct and proximate result of the Defendants' reckless indifferent conduct towards a known substantial risk of harm to the inmate as follows:

     a.)    In failing to recognize that the Decedent presented an objective and/or excessive risk of suicide;

     b.)    In failing to respond properly or adequately to the objective and/or excessive risk of suicide posed by the Decedent;

c.)    In failing to properly monitor the Decedent and/or adhere to policies and procedures of the Allegheny County Jail;

d.)    In failing to request medical intervention by experienced medical/correctional personnel on the Decedent's behalf;

e.)    In prematurely discharging Decedent from the detoxification program;

f.)    In failing to provide proper treatment to Decedent in the detoxification program;

g.)    In failing to properly observe the condition of the Decedent while in custody;

h.)    In deliberately and willfully placing Decedent in a cell without taking appropriate precautions to ensure his safety while in custody in that cell;

i.)    In failing to provide a safe environment that would have prevented Decedent's death by suicide;

j.)    In failing to acquire medical assistance for Decedent in a timely manner;

k.)    In failing to monitor the Decedent appropriately under the circumstances;

l.)    In failing to review information concerning issues related to suicide;

m.)    In failing to conduct the health receiving screen in a manner which would continuously alert them to suicidal behavior;

n.)    In failing to provide training in suicide training in the training programs for both Allegheny County Jail correctional and health care staff;

o.)    In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for suicide;

p.)    In failing to recognize that the Decedent as being potentially suicidal due to his conduct and/or other factors;

q.)    In failing to request an immediate evaluation of Decedent through the nursing mental health staff on the medical/mental health Pods;

r.)     In failing to conduct the assessment of potentially suicidal inmates by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

s.)     In failing to place the Decedent in the appropriate acute mental health housing unit;

t.)     In failing to provide regular and documented supervision of Decedent;

u.)     In failing to make the cell where the Decedent passed away as nearly suicide proof as possible;

v.)     In failing to check on the Decedent every 15 minutes and/or the appropriate period of time;

w.)     In failing to outline the procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities;

x.)     In failing to provide procedures for communication between health care personnel and Allegheny County Jail correctional personnel regarding the status of the inmate in a clear, current and accurate fashion;

y.)     In failing to outline an intervention plan on how to handle a suicide and/or detox of inmates from alcohol or drugs;

z.)     In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed suicides of inmates;

aa.)    In failing to provide procedures of documenting the identification and monitoring of potential or attempted suicides of inmates;

bb.)    The intake correctional officers did not receive intensive training on suicide prevention;

cc.)    The intake correctional officers did not receive performance evaluations in order to assist them in the performance of their jobs;

dd.)    Only one medical unit correctional officer was assigned to medical unit which created a substantial risk of harm to inmates for suicide;

ee.)    The medical unit correctional officer did not do rounds every 15 minutes and/or at reasonable time increments on the medical unit pod;

ff.)     The medical unit correctional officers housed inmates in cells that had suicide hazards and were set up in a way that created suicide hazards;

gg.)    The initial evaluation performed at intake did not convey the necessary information to the intake correctional officers in order to perform the appropriate suicide prevention policy;

hh.)    Reckless indifference to all inmates in the medical unit who were celled similar to the Decedent which created a substantial risk of harm to all inmates who were housed in the medical unit for suicide;

ii.)     In ignoring the notice given in Dr. Dixon's analysis;

jj.)     In failing to supervise and train correctional officers in the proper policies and procedures in guard tours;

kk.)    In providing semi-private rooms to medically ill/mentally ill/recovering from addiction individuals who may be more susceptible to suicide;

ll.)     In providing at risk inmates housing which prevented observation by correctional officers;

mm.)   In providing a semi-private room which created a substantial risk of suicide to inmates assigned their due to providing sheets, a ceiling grate and a private area to commit suicide;

nn.)    In allowing CO Goings to continue working when they knew or should have known that he created a substantial risk of harm to inmates and staff by not following required policies and procedures;

oo.)    In failing to train CO Goings and/or any other named or unnamed person in proper suicide prevention;

pp.)    In only providing one correctional officer for the medical unit which created a substantial risk of harm to inmates and staff;

qq.)    In failing to mandate that rounds must be done 15 minutes, rather than the prior policy of checking inmates every 30 minutes;

rr.)     It is believed that CO Goings did not receive the proper training and required training to make suicide prevention a priority at the Allegheny County Jail which substantially increased the risk of suicide for inmates in the medical unit;

ss.)   In providing a cell with a ceiling grate in an area that created suicide hazards;

tt.)   It is believed that the prematurely discharging Decedent from the detoxification program and/or the inadequate detoxification of Decedent substantially increased his risk of suicide as he was suffering from a psychological condition as a result of, in whole or in part, the drug and/or alcohol addiction and withdrawal;

uu.)   In housing the Decedent in cell I1;

vv.)   Defendant Goings failed to do rounds pursuant to the policies and procedures of the Allegheny County Jail;

ww.)   Defendant Goings and all other Defendants failed to prevent the suicide of this Decedent by not reporting and/or informing his superiors/their subordinates of the suicide hazards present in this cell and unit;

xx.)   Defendant Goings did tours every 1 hour instead of 15-minute checks;

yy.)   Defendant Goings did tours every 30-minute plus tours instead of the 15 minute checks;

zz.)   In acting recklessly indifferent to the Decedent as described in this Complaint;

aaa.)   In failing to provide suicide preventive sheets/blankets.

93.     Defendants' failure to recognize and respond to the objective and/or excessive risk of suicide posed by the Decedent while in the custody of the Defendants caused the Decedent's injuries and death.

94.     Defendants, in depriving Decedent of his constitutional rights, were intentional, negligent, recklessly indifferent, willful, wanton, malicious, and outrageous.

95.     Plaintiff also claims reasonable attorneys' fees and costs from Defendants as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory

and punitive damages, together with court costs, attorneys' fees, interest, and all other relief

permitted by the Court.  JURY TRIAL DEMANDED.

### COUNT II – VIOLATIONS OF THE EIGHTH AND/OR FOURTEENTH AMENDMENTS
### PLAINTIFFS v. ALLEGHENY COUNTY, ORLANDO HARPER, MONICA LONG, DANIEL BOSI, MICHAEL GILLESPIE, MICHAEL BUTTERFIELD, PATRICIA PORCHE , KENNETH L. GOINGS, JOHN R. WILLIAMS, JR. AND SIMON WAINWRIGHT

96.     Plaintiff incorporates by reference the above paragraphs of the within Complaint

the same as though set forth herein and at length.

97.     Decedent's injuries, death, and damages were a direct and proximate result of the

Defendants' conduct towards a known substantial risk of harm as follows:

a.)     In failing to train properly individual corrections officers in safe methods of handling incarcerated persons;

b.)     In failing to train properly individual corrections officers in the monitoring of incarcerated persons under the care and custody of the Defendant ALLEGHENY COUNTY;

c.)     In failing to properly train individual corrections officers to provide medical intervention to persons under the care and custody of the Defendant ALLEGHENY COUNTY;

d.)     In failing to recognize that the Decedent's mental health needs prior to his incarceration may have rendered him more susceptible to injury and/or suicide;

e.)     In failing to supervise properly individual corrections officers/employees/co-Defendants;

f.)     In failing to train properly corrections officers in the recognition of objective and/or excessive suicide risk of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

g.)     In failing to train properly corrections officers in suicide prevention of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

h.)     In failing to train properly corrections officers in suicide risk assessment of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

i.)     In failing to train properly corrections officers/staff in responding to objective and/or excessive suicide risk in persons under the care and custody of the Defendant ALLEGHENY COUNTY;

j.)     In failing to review information concerning issues related to suicide and/or detox and when to release inmates to the medical unit;

k.)     In failing to conduct the health receiving screen in a manner which would continuously alert them to suicidal behavior;

l.)     In failing to provide training in suicide training in the training programs for both Allegheny County Jail correctional and health care staff;

m.)     In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for suicide;

n.)     In failing to recognize that Decedent as being potentially suicidal;

o.)     In failing to request an immediate evaluation of the patient through the nursing mental health staff;

p.)     In allowing Decedent to be placed in the medical unit knowing that the semi-private rooms created a substantial risk of harm to inmates in medical/mental distress;

q.)     In allowing Decedent to be placed in the medical unit knowing that cells contained suicide hazards which created a substantial risk of harm to inmates in medical/mental distress;

r.)     In failing to conduct the assessment of potentially suicidal inmates by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

s.)     In failing to place the Decedent in the appropriate acute observation area;

t.)     In failing to provide regular and documented supervision of Decedent;

u.)     In housing the Decedent in cell I1;

v.)     In failing to make the room where the Decedent passed away as nearly suicide proof as possible;

w.)     In failing to check on the Decedent every 15 minutes;

x.)     In failing to outline the procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities;

y.)     In failing to provide procedures for communication between health care personnel and Allegheny County Jail correctional personnel regarding the status of the inmate in a clear, current and accurate fashion;

z.)     In failing to outline an intervention plan on how to handle a suicide;

aa.)     In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed suicides of inmates;

bb.)     In failing to provide procedures of documenting the identification and monitoring of potential or attempted suicides of inmates;

cc.)     The medical unit correctional officers did not receive intensive training on suicide prevention;

dd.)     The unit correctional officers did not receive performance evaluations in order to assist them in the performance of their jobs;

ee.)     The medical unit correctional officers did not do guard tours pursuant to policy and procedure and/or never saw the policy and procedures which governed this area;

ff.)     The correctional officers did not do rounds every 15 minutes on the Medical unit pod;

gg.)     The initial evaluation performed at intake did not convey the necessary information to the intake correctional officers in order to perform the appropriate suicide prevention policy.

hh.)     In having an inadequate or ineffective detoxification process;

ii.)     In failing to properly train their employees on how to properly detoxify an inmate with alcohol and/or drug addiction and withdrawal;

jj.)    Reckless indifference to all inmates in the medical unit pod who were single celled in semi-private cells which created a substantial risk of harm to all inmates who were single celled in semi-private rooms for suicide;

kk.)    In ignoring the notice given in Dr. Dixon's analysis;

ll.)    In providing semi-private rooms to medically ill/mentally ill/recovering from addiction individuals who may be more susceptible to suicide;

mm.)    In providing at risk inmates housing which prevented observation by correctional officers;

nn.)    In providing a semi-private room which created a substantial risk of suicide to inmates assigned their due to providing sheets and a private area to commit suicide;

oo.)    In allowing CO Goings to continue working when they knew or should have known that he created a substantial risk of harm to inmates and staff by not following required policies and procedures and/or not being trained properly;

pp.)    In failing to train CO Goings and/or any other named or unnamed person in proper suicide prevention;

qq.)    In only providing one correctional officer for the medical unit which created a substantial risk of harm to inmates and staff;

rr.)    In failing to mandate that rounds must be done 15 minutes, rather than the prior policy of checking inmates every 30 minutes;

ss.)    It is believed that CO Goings did not receive the proper training and required training to make suicide prevention a priority at the Allegheny County Jail;

tt.)    The medical unit correctional officers single celled inmates in semiprivate cells even though the Allegheny County Jail knew from the previous suicide in April of 2017 in the medical unit that the correctional officers and staff were not following the policies and procedures and/or were not trained properly to observe for suicidal actions of the inmates;

uu.)    The Defendants knew from the April of 2017 death by suicide that the cells contained suicide hazards;

vv.)    In failing to provide suicide preventative blankets for the medical unit;

29

ww.) In failing to suicide proof the cells of the medical unit after the death of Jamie Gettings;

xx.) In knowing that Defendant Goings failed to do rounds pursuant to the policies and procedures of the Allegheny County Jail;

yy.) Defendant Goings and all other Defendants failed to prevent the suicide of this Decedent by not reporting and/or informing his superiors/their subordinates of the suicide hazards present in this cell and unit;

zz.) In knowing Defendant Goings did tours every 1 hour instead of 15 minute checks;

aaa.) In knowing Defendant Goings did tours every 30 minute plus instead of the 15 minute checks;

bbb.) In acting recklessly indifferent to the Decedent as described in this Complaint;

ccc.) In failing to provide suicide preventive sheets/blankets.

98.     The actions of the individual corrections officers as aforesaid resulted from and were taken pursuant to a policy, practice, and/or custom of the Defendant ALLEGHENY COUNTY, which policy, practice and/or custom is implemented by individual corrections officers.

99.     Defendant ALLEGHENY COUNTY had approved and condoned the procedures implemented by and enforced by the individual correctional officers.

100.    The Defendants' failure to recognize or respond to the objective and/or excessive risk of suicide presented by the Decedent while in the care and custody of the Defendant ALLEGHENY COUNTY caused his injuries and death.

101.    Plaintiff also claims reasonable attorneys' fees and costs from Defendants as provided for by 42 U.S.C. §1988.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory

and punitive damages, together with court costs, attorneys' fees, interest, and all other relief

permitted by the Court. JURY TRIAL DEMANDED.

## COUNT III – WRONGFUL DEATH
## PLAINTIFF v. ALL DEFENDANTS

102.    Plaintiff incorporates by reference the above paragraphs of the within Complaint

the same as though set forth herein and at length.

103.    The following individuals are eligible to recover damages as a result of the

Decedent's death pursuant to Pa. C.S.A. §8301:

        a.)    J.O.V. (a minor son)

104.    During his lifetime, Decedent did not commence any action for the injuries that

caused his death and no other action has been filed to recover damages for the wrongful death of

Decedent.

105.    At all relevant times, Defendants conducted themselves in a careless, reckless

indifferent, and negligent manner, and acted with reckless indifference to the rights of the

Decedent generally and in the above stated particulars.

106.    As the direct and proximate result of the Defendants' negligence, Plaintiff and

entitled persons have suffered the following damages:

        a.)    Funeral expenses of the Decedent;

        b.)    Expenses of administration related to the Decedent's injuries;

        c.)    The loss of contribution, support, consortium, comfort, counsel, aid, association, care and services of the Decedent;

        d.)    Medical expenses incidental to treatment of the Decedent for his injuries and subsequent death;

e.)     Such other damages as are permissible in the wrongful death action;

f.)     Other losses and damages recoverable under 42 Pa. C.S.A. §8301. 68.

107.    As a direct and proximate result of the previously described outrageous, reckless, negligent, willful, wanton, and/or intentional conduct of the Defendants, Plaintiff seeks punitive damages on behalf of the persons identified herein.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL DEMANDED.

## COUNT IV – SURVIVAL ACTION
## PLAINTIFFS v. ALL DEFENDANTS

108.    Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

109.    Plaintiff brings this survival action pursuant to 20 Pa.C.S. § 3373 and 42 Pa.C.S. § 8302.

110.    As the direct and proximate result of the Defendants' negligence/recklessness, the Defendants, and each of them, are liable for the following damages:

a.)     Decedent's pain and suffering between the time of the Defendants' negligence and time of the Decedent's death;

b.)     Decedent's total estimated future earning power, less his estimated cost of personal maintenance;

c.)     Decedent's loss of retirement and Social Security income;

d.)     Decedent's other financial losses suffered as a result of his death; and

e.)     Decedent's loss of the enjoyment of life.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.


PLAINTIFF REQUESTS THAT ALL ISSUES THAT MAY BE DETERMINED BY A JURY BE TRIED BY A JURY.




Respectfully submitted,


BY:     /s/ Steven M. Barth, Esquire__
        Steven M. Barth, Esquire
        Pa. I.D. #89395
        P.O. Box 23627
        Pittsburgh, PA 15222
        smbassociates@gmail.com

BY:     /s/  Jonathan M. Gesk, Esquire _
        Jonathan M. Gesk, Esquire
        Gesk Moritz, LLC
        Pa. I.D. #205678
        14 E. Main Street
        Carnegie, PA, 15106
        jgesk@gesklaw.com
        (412) 429 – 9100 (PH)
        Attorneys for the Plaintiff


Dated: May 23, 2019